COUNTY OF DOUGLAS v. TOWNSHIP OF DEAD LAKE, OTTER TAIL COUNTY.[1]

January 17, 1930.

No. 27,575.

*Roger L. Dell,* for appellant.

*Ralph S. Thornton,* County Attorney, for respondent.

TAYLOR, C.

Douglas county has the so-called county system of caring for the poor, and Otter Tail county has the so-called town system. This is

[1]Reported in 228 N. W. 929.

a proceeding under L. 1925, p. 487, c. 378 [1 Mason, 1927, § 3161-1 et seq.] brought by Douglas county against the town of Dead Lake in Otter Tail county to determine the place of settlement of John J. Lafferty, a poor person 78 years of age. The district judge found and determined that he had a legal settlement in the town of Dead Lake. The town appealed.

That Lafferty was and is a poor person in need of assistance and that he never resided in Douglas county is conceded. He became lost in a snowstorm and on December 24, 1927, was found in Douglas county penniless and so badly frozen that it was necessary to amputate portions of his feet. The authorities of that county placed him in a hospital and had him properly cared for. Ascertaining that he came from the town of Dead Lake, they notified that town of his condition but the town refused to make any provision for him. Douglas county cared for him until the following September at an expense of $738. His wounds were then healed and he returned to Dead Lake; but shortly thereafter entered a hospital at Walker in Cass county and came from that hospital to the hearing held in November, 1928.

The town claims, first: That the county cannot maintain this proceeding for the reason that Lafferty had left the county and was no longer receiving support from it; and second, that the finding that Lafferty had a legal settlement in the town is not sustained by the evidence.

L. 1925, p. 487, c. 378 [1 Mason, 1927, § 3161-2], so far as here material, provides that:

"Whenever a dispute shall arise between two or more counties or between a county and a political subdivision of another county * * * as to the place of settlement of any poor person, any such county or political subdivision may serve upon the other or others a notice that it will * * * apply to a judge of the district court * * * for a determination of the settlement of such poor person."

It further provides that the judge, after hearing the evidence adduced by the parties,

"shall forthwith make and file his order determining the place of settlement of such poor person."

It further provides [§ 3161-4] that the place of settlement of such poor person as so determined, "shall thereafter be charged with his care and support."

This statute simply provides a summary proceeding for determining the county or political subdivision which shall thereafter be charged with the care and support of the poor person. It does not authorize a recovery in this proceeding for expenditures made for such care and support. This matter is covered by other statutes. The sole purpose of the proceeding is to have it determined expeditiously and definitely where the burden rests to furnish care and support needed thereafter. That a dispute shall have arisen as to the place of settlement is all that the statute requires to authorize instituting the proceeding. If the county had instituted the proceeding while furnishing support, its right to do so could not be questioned. But it is conceded that Mr. Lafferty is so crippled and infirm that he is unable to support himself and that he now is and will continue to be in need of care and support. The facts clearly bring the case within the mischief sought to be cured by the statute. The statute does not require that the proceeding shall be begun while the county or political subdivision instituting it is furnishing aid or under obligation to do so, and we are of opinion that this case is within the class of cases to which the statute was intended to apply.

Lafferty has no relatives in this state but has a brother supposed to be living in the state of New York. The judge found that he had been in the state of Minnesota continuously for more than 25 years except when working in the harvest fields, and the evidence justifies this finding. During this period he worked at lumbering camps in the winter, on log drives in the spring, and in the harvest fields during the harvesting season. He usually began his harvesting work in Kansas and then proceeded north through the Dakotas as the season advanced. Except when engaged in harvesting he was in Minnesota. Some ten years ago he worked one summer for

Ed Eslick, a farmer then living at Eagle Lake, and thereafter when not at work lumbering or harvesting he usually stayed at Eslicks and called that his home. About six years ago Eslick moved into Dead Lake town. At the close of the harvesting season in 1926 Lafferty returned to Eslick's and remained there that winter and the following spring, a period of some seven months. He then left Eslick's to work in the harvest fields, but returned there at the close of the harvest season and remained there until he started on the trip in which he became lost in the storm.

The statute provides:

"Every person who has resided one year continuously in the state, but not in any one county, shall have a settlement in the county in which he has longest resided within such year, if it has the county system; if it has the town system, his settlement shall be in the town, city or village therein in which he has longest resided within such year." G. S. 1923 (1 Mason, 1927) § 3161.

Lafferty had been a resident of this state for many years. If he had not resided in Otter Tail county continuously during the year preceding the time he became a public charge, he had resided in that county and also in the town of Dead Lake longer than in any other county during such year, and therefore under the statute had acquired a legal settlement in that town. In the case of Town of Highland Grove v. County of Clay, 101 Minn. 11, 111 N. W. 651, upon which the town relies, it did not appear that the pauper was a resident of this state, and proof of that fact was necessary to bring him within the protection of the above statute. The present case is more nearly analogous to the case of Town of Albion v. Village of Maple Lake, 71 Minn. 503, 74 N. W. 282.

The order is affirmed.